## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARS AREA SCHOOL DISTRICT**, | ) |
| **Plaintiff**, | ) |
| | ) |
| **v.** | ) **2:14-cv-1728** |
| | ) |
| **C. L.**, *by and through his parent and natural* | ) |
| *guardian, K.B.*, | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION

This action is an appeal of the decision of a Pennsylvania Special Education Due Process Hearing Examiner under the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1401 *et seq.* ECF No. 1. On September 18, 2015, the Court ordered Plaintiff, the Mars Area School District, to show cause why this case should not be dismissed as moot in light of C.L. having been transferred out of the School District after the issuance of the Hearing Officer's decision. ECF No. 27. The School District filed a response to the Order to Show Cause on September 28, 2015. ECF No. 28. Defendants, C.L., by and through his parent and natural guardian K.B., filed a reply on October 8, 2015. ECF No. 29.

### I.    Background

C.L. was a seven-year-old first grader at Mars Area Primary Center in the School District at the start of the 2014/2015 school year. Hr'g Officer's Decision ¶ 1. At age 2.5, C.L. was diagnosed with Opposition Defiant Disorder ("ODD"). *Id.* ¶ 3. He has also been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). C.L. attended a private pre-school/kindergarten before he entered the School District. *Id.* ¶ 4. He "displayed intense and challenging behaviors throughout the pre-school and kindergarten years, but the school staff, who had developed a close relationship with [C.L.], were somewhat successful in diminishing

1

the behaviors through interventions . . . ." *Id.* ¶ 5. In addition, during his kindergarten year, C.L. was "assigned a Therapeutic Support Staff ("TSS") worker to accompany [him] for the entire school day. The TSS worker stayed close to [C.L.] and was often able to prevent or interrupt unacceptable behaviors." *Id.* ¶ 6. When C.L. enrolled in the School District at the start of the 2014/2015 school year, however, the TSS services were discontinued. *Id.* ¶ 8. "Within the first two weeks of the [2014/2015] school year, [C.L.] frequently began exhibiting extreme difficulties with behavior regulation and non-compliance. [His] severe challenging behaviors included pushing, hitting and kicking peers and staff, growling, barking, throwing objects and property destruction." *Id.* In mid-September, the School District suggested an alternative placement for C.L., but C.L.'s mother, K.B., refused. *Id.* ¶ 9. She did, however, agree to have C.L. evaluated to determine whether he was IDEA eligible. *Id.* ¶ 10. While the evaluation was ongoing, C.L. was suspended for a total of 14 days between September 18 and October 21, 2014, "[b]ecause of extreme behaviors." *Id* ¶ 17.

On October 27, 2014, C.L. engaged in a series of "behavior incidents" that led the School District to begin the process of expelling him. *Id.* ¶ 18. "Because an IDEA evaluation was underway, and [C.L.] was thought to be disabled, the District conducted a manifestation determination review on November 3, 2014."[1] *Id.* ¶ 19. Following the manifestation

---

1.     Before a school district (or "local educational agency" in the parlance of the IDEA) may suspend a disabled student for more than ten (10) days, it must conduct a manifestation determination review to decide whether the conduct for which the student is to be suspended was a manifestation of the student's disability. 20 U.S.C. § 1415(k)(1)(E). To make that decision, the school district, the parent, and members of the student's IEP team must meet to review the student's educational file, including the student's IEP (if one exists), relevant teacher observations, and any other information provided by the parents. 20 U.S.C. § 1415(k)(1)(E)(i). If the review team determines that "the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability" or that "the conduct in question was the direct result of the local educational agency's failure to implement the IEP," then "the conduct shall be determined to be a manifestation of the child's disability." 20 U.S.C. § 1415(k)(1)(E)(i)-(ii). In

determination review, the School District concluded that the conduct for which C.L. was being expelled was not a manifestation of his disability. *Id.* ¶ 20. Immediately following the manifestation determination review, the School District proceeded to conduct a two-day expulsion hearing. *Id.* ¶ 19. The School Board committee that presided over the expulsion hearing ultimately recommended expulsion for C.L., *id.* ¶ 34, and consistent with that recommendation, the full Board eventually voted to expel C.L.

Thereafter, K.B. requested a due process hearing, in which she sought review of the School District's manifestation determination. Pennsylvania Special Education Hearing Officer Anne L. Carroll, Esq., conducted an expedited hearing on November 10, 2014. Two weeks later, the Hearing Officer issued a decision in which she found that the School District's "manifestation determination was clearly erroneous as a matter of both fact and law." *Id.* at 18. The Hearing Officer ordered the School District to:

> 1) Reinstate Student to the regular education setting from which Student was expelled, unless Parents agree that Student will attend the alternative education setting recommended by the District, or another placement agreed to by Parents and the District, which may be proposed by either Parents or the District.
>
>> a. The reinstatement shall be accomplished by the first day that students in the District return to school after the Thanksgiving holiday, unless Parents request or agree to a later date for reinstatement;
>>
>> b. The District shall take whatever steps are necessary to assure that Student is accompanied by an adult at all times during each school day;

---

such cases, the school district must "conduct a functional behavioral assessment, and implement a behavioral intervention plan," unless one had already been conducted, in which case the IEP team must review and modify the existing plan, and the child must be returned to the placement from which he was removed. 20 U.S.C. § 1415(k)(1)(F)(i)-(iii). Conversely, if the members of the review team determine that the conduct at issue was *not* a manifestation of the student's disability, the school district may impose the same disciplinary measures that it would impose on non-disabled students. 20 U.S.C. § 1415(k)(1)(C).

  c. By the beginning of the third marking period of the current (2014/2015) school year, the District shall secure the services of a board certified behavior analyst (BCBA) to provide training in effective techniques for managing Student's behaviors for any District employee who teaches Student, provides counseling or other services to Student, or who is assigned, permanently or temporarily, to serve as an instructional aide or personal care assistant to help manage Student's behaviors, whether on a one to one basis or as a classroom assistant;

  d. TSS services by a behavioral health organization may supplement District services, but shall not supplant or diminish the District's obligations to work toward assuring that Student's challenging behaviors do not compromise the safety of Student, peers and staff, and that disruptions to the learning of Student and peers are minimized to the extent reasonably possible.

2) If not already done, convene Student's IEP team to consider the results of the District ER and develop and appropriate IEP, including comprehensive support plan, and recommend an appropriate education placement for Student.

3) The District's regular education setting shall remain Student's pendent educational placement until such time as Student's IEP team recommends, and Parents sign a NOREP agreeing, to a change of educational placement.

4) If the District proposes, and wants to implement a change of educational placement for Student to which Parents do not agree, the District follow prescribes [sic] and appropriate IDEA consent override procedures by submitting a due process complaint under 34 C.F.R. §§ 300.507(a), 508 and/or 300.532.

*Id.* at 19-20. Following the issuance of the Hearing Officer's decision, K.B. placed C.L in a private school. Am. Compl. in 2:14-cv-01666 ¶ 152. Because of C.L.'s transfer, in the words of the School District, it "was unable to implement the Hearing Officer's Decision and Order . . . ." Pl.'s Resp. 1.

  The School District filed its Complaint in this Court on December 22, 2014, seeking to reverse the Hearing Officer's decision.[2] C.L., by and through K.B., filed an Answer on February

---

2.   A party aggrieved by the findings and decision of an IDEA administrative due process hearing may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). A court considering an appeal of an IDEA administrative due process hearing "(i) shall receive the

20, 2015, in which they also incorporated by reference the Amended Complaint filed at 2:14-cv-01666 as a counterclaim.[3] On September 8, 2015, the parties filed their competing dispositive motions.[4] ECF Nos. 23, 25. Following its initial review of the parties' filings, the Court issued an Order to Show Cause, directing the School District to explain why this case should not be dismissed as moot. With the parties' responses having been filed, the matter is now ripe for disposition. The Court initially granted Defendants' request for an oral argument on this matter. Upon further reflection, however, the Court has determined that it can be resolved without an oral argument. Therefore, the argument scheduled for October 21, 2015, is hereby cancelled.

## II.    The Parties' Positions

In its response to the Order to Show Cause, the School District argues that this case is not moot because it could be bound in future proceedings by "the factual determinations and legal

---

records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

3.    As the parties are well aware, C.L., by and through K.B., filed a separate action at 2:14-cv-01666, in which they raised claims under the IDEA; Section 504 of the Rehabilitation Act; the Americans with Disabilities Act; 42 U.S.C. § 1983; and Pennsylvania law. The Court dismissed all of these claims because C.L., by and through K.B., failed to fully exhaust administrative remedies before filing suit in federal court. The same result must obtain in this case. Therefore, C.L.'s counterclaims (with the exception of the claim for attorney's fees incurred at the administrative level) are dismissed for failure to exhaust administrative remedies. The Court notes that, in light of the rulings in the companion case, C.L., by and through K.B., filed a new due process complaint, which is set to be heard on November 4, 2015. Defs.' Reply at 3.

4.    The School District actually filed a standalone document styled a "Brief in Support of Complaint in the Nature of an Appeal from Decision and Order of Special Education Hearing Officer." ECF No. 23. The Court has construed this as a motion for summary judgment, which is usually the vehicle by which IDEA appeals are submitted for disposition. *See M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003) (explaining that "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record").

conclusions contained within the Hearing Officer's Decision and Order." Pl.'s Resp. 2. According to the School District, C.L., by and through K.B., "will argue in any future proceedings" that the School District is so bound, and the School District "would most certainly be subject to the factual determinations and legal conclusions contained within the Hearing Officer's Decision and Order." *Id.* By contrast, "[i]f this Court were to reverse the Hearing Officer's Order," the School District claims that it "would have an absolute legal defense, as it relates to issues before the Hearing Officer, to future claims for compensatory education" and the like. *Id.* In addition, C.L., by and through K.B., "would not be able to establish 'prevailing party' status under the IDEA and, as such, [they] would not be entitled to legal fees related to the administrative proceedings before the Hearing Officer." *Id.*

K.B. agrees with the School District that this action is not moot, offering three reasons why (though there is much overlap in her arguments). First, she contends that, in accordance with the Court's ruling in the companion case, she filed a new due process complaint, raising the issues that were not previously administratively exhausted – including a claim that C.L. was denied a FAPE. According to K.B., "the findings of fact issued by the Hearing Officer on November 10, 2014 will have res judicata and collateral estoppel effect as to the current Hearing Officer's decision." Defs.' Reply 3. "Therefore," she submits "that the [November 10] decision is not moot but must be affirmed." *Id.* Second and relatedly, in responding to the Court's observation that it appears that effective relief can no longer be granted, K.B. argues that "the Court can grant effective relief by affirming the [Hearing Officer's] decision." *Id.* at 4. Third and finally, she argues that her claim for attorneys' fees presents a real controversy between the parties, thus preventing this case from being moot.

### III.    Discussion

Although neither side has raised the issue of mootness – and indeed now agree that the School District's appeal is *not* moot – this issue nonetheless must be addressed *sua sponte* because it implicates the Court's Article III jurisdiction. *See New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 n.10 (3d Cir. 1985) (citations omitted); *United States v. Johnson*, 801 F.2d 597, 600 (2d Cir. 1986) ("Mootness is a jurisdictional issue, and the agreement of the parties does not bind us."). Under Article III, this Court "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). "[A]n issue is not 'live' if reversal [of the decision under review] would provide the appellant 'with no actual, affirmative relief.'" *Matter of Establish Inspection of Metal Bank of Am., Inc.*, 700 F.2d 910, 913 (3d Cir. 1983) (quoting *In re Kulp Foundry*, 691 F.2d 1125, 1128-29 & n.7 (3d Cir. 1982)). In other words, if there is nothing to be "gained by reaching a decision," the case is moot and must be dismissed. *Main Line Fed. Sav. & Loan Ass'n v. Tri-Kell, Inc.*, 721 F.2d 904, 907 (3d Cir. 1983).

Despite the parties' agreement to the contrary, such is the case here. Reversing the Hearing Officer's decision would have no effect on the parties' substantive rights since C.L.'s transfer out of the District relieved the School District of its obligation to comply with the Hearing Officer's order. As the Court already observed, the Hearing Officer's order required the School District to take certain actions in the future – e.g., reinstate C.L. and develop an appropriate IEP for him. However,

> [t]he School District never changed its behavior in any way because of the [Hearing Officer's] order; it never had the chance to because C.L. was removed from the District by his parent. And it will never have to change its behavior in the future because C.L. no longer attends school in the District. So even if the

Hearing Officer's decision were to be reversed, the School District would be left in the same position it was in beforehand.

Order to Show Cause 2. Simply put, while the School District disagrees with the Hearing Officer's factual and legal conclusions and believes that they should not be allowed to stand, "[r]eversal of the [Hearing Officer's] decision does not in itself constitute meaningful or effective relief . . . ." *J.F. v. New Haven Unified Sch. Dist.*, No. 13-03808, 2014 WL 6485643, at *4 (N.D. Cal. Nov. 19, 2014). Were that the case, the Court's ruling would be tantamount to an advisory opinion – something Article III clearly does not permit. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.'"). Thus, since meaningful relief can no longer be granted to the School District, this appeal is moot.

There are, of course, a few exceptions to the mootness doctrine. "Under the 'capable of repetition' exception, for example, a court may exercise its jurisdiction and consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). However, because C.L. is no longer enrolled in the School District, there is no expectation that the issues that gave rise to the due process complaint that is the subject of this appeal will reoccur between these parties. Granted, there might be some chance that C.L. will return to the School District in the future and again be subjected to some form of discipline that triggers the IDEA's protections. But this "mere physical or theoretical possibility" is not "'sufficient to satisfy' the 'capable of repetition' exception . . . ." *Andre S.*, 2010 WL 715560, at *5 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

A second exception applies when the defendant voluntarily ceases the offending conduct. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) ("Voluntary cessation does not moot a case or controversy unless subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur[.]") (citation and quotation marks omitted). Although K.B. unilaterally decided to remove C.L. from the School District, the Court is not convinced that this fact renders this exception applicable. As one court has observed, there is no "authority applying" the voluntary cessation exception "to the parents of a student under IDEA" who take action after a favorable administrative decision that moots a school district's appeal. *Andre S.*, 2010 WL 715560, at *5. That is not surprising, for it would be difficult to fit the circumstances of this case, or others like it, into the framework of the voluntary cessation exception. The exception applies when the *defendant* stops engaging in the allegedly offensive conduct. Although C.L., by and through K.B., are nominally defendants in this case, they initiated the due process hearing and so are not the (allegedly) offending parties. The opposite is actually true. For these reasons, the Court finds that the voluntary cessation exception is not applicable here.

A final exception "exists where a party would suffer 'collateral legal consequences if the actions being appealed were allowed to stand.'" *San Diego Cnty. Office of Educ. v. Pollock*, No. 13-1647, 2014 WL 2860279, at *3 (S.D. Cal. June 20, 2014) (quoting *Pub. Util. Comm'n of the State of Cal. v. Fed. Energy Reg. Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996)). "This exception is concerned with 'collateral deprivations of civil rights or other specifically legal consequences.'" *Marshall v. Whittaker Corp., Berwick Forge & Fabricating Co.*, 610 F.2d 1141, 1145 (3d Cir. 1979). Most often, it is "invoked where a former prisoner demonstrates that he will suffer serious collateral consequences if his conviction is allowed to stand." *Bass v. Butler*, 238

F. App'x 773, 777 n.4 (3d Cir. 2007). Even though the prisoner may have been released from prison by the time his claim for habeas relief is filed, his interest in eradicating the collateral consequences of his conviction will save his claim from being moot. *See McNairy v. Sherman*, No. 05-323, 2006 WL 3332012, at *2 (W.D. Pa. Nov. 16, 2006). "Outside of criminal appeals and habeas petitions," however, the "scope [of this exception] is difficult to discern" and its application "is relatively rare[.]" *Samsung Electronics Co. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 477 (E.D. Va. 2005). The School District's concerns about the potential preclusive effects of the Hearing Officer's findings "might plausibly be construed as adverse legal consequences," but, as will be discussed in a moment, "this situation has been addressed by courts, and resolved in a different fashion." *Pollock*, WL 2860279, at *12. Furthermore, although the School District may be pursuing this appeal, in part, to avoid paying attorney's fees to K.B. under 20 U.S.C. § 1415(i)(3)(B), "[a]n 'interest in attorneys' fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'" *Van Alstyne Indep. Sch. Dist. v. Andre S.*, No. 09-89, 2010 WL 715560, at *4 (E.D. Tex. Feb. 23, 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)); *see also Dep't of Educ., State of Hawaii v. Rodarte ex rel. Chavez*, 127 F. Supp. 2d 1103, 1113 (D. Haw. 2000) ("A pending question of attorneys' fees for the prevailing party in an administrative hearing, however, does not create 'collateral consequences.'").

K.B.'s arguments as to why this case is not moot could also be construed as raising concerns about the collateral consequences of allowing the Hearing Officer's decision to stand (though she has not actually cited any authority in support of her position, let alone any cases specifically addressing this exception). Only, unlike the School District, K.B. is not concerned with the potential continuing *negative* effects of the findings contained within that decision. She,

instead, wants to lock those findings in place – since they were in her favor – ensuring that they will have "res judicata and collateral estoppel effect as to the current Hearing Officer's decision." Defs.' Reply 3. The Court can find no support for this argument.[5] Indeed, it flies in the face of the rule that "appellees [cannot] deliberately moot cases on appeal, thereby shielding erroneous decisions from reversal." *Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 73 (2d Cir. 1991) (citing *Wisconsin v. Baker*, 698 F.2d 1323, 1330-31 (7th Cir. 1983); *FTC v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir. 1977)). "Approval of such a strategy would render the bizarre result that judgments mooted on appeal would have greater preclusive effect than cases susceptible of review." *Id.*

Because the School District's appeal has been determined to be moot and no exception applies, one question remains: what is the appropriate disposition of this matter? As was just mentioned, the School District's concerns about the possible preclusive effects of the Hearing Officer's decision are not enough to keep this otherwise moot appeal alive. Those concerns do, however, raise the possibility that vacatur of the Hearing Officer's decision might be in order.

---

5.      The closest thing the Court could find in the way of authority supporting K.B.'s position (and, actually, it's not that close) is *National Iranian Oil Co. v. Mapco International, Inc.*, 983 F.2d 485 (3d Cir. 1992); *see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1497 (3d Cir. 1996) (discussing *Mapco* in *dicta*). In *Mapco*, the Court of Appeals for the Third Circuit determined that an order dismissing a case on limitations grounds could have collateral estoppel effect in other pending actions, and thus, for that and other reasons, the appeal of the order was not moot. *Id.* at 1497 ("The district court's holding that the Iranian statute of limitations does not apply would have collateral estoppel effects in those actions and could result in their dismissal."). *Mapco* is distinguishable, however. Most notably, it involved a situation where the appellant would continue to suffer adverse consequences from the underlying decision if the case were deemed moot – i.e., its other cases might also be dismissed on limitations grounds. Here, by contrast, the *appellee* is arguing against mootness to preserve the favorable findings below. Generally, as discussed more fully in the text, the rules regarding the equitable doctrine of vacatur disallow this practice: if a case becomes moot pending appeal, the lower court's judgment is typically vacated, thereby preventing it "from spawning any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950).

*See Pollock*, 2014 WL 2860279, at *13 (explaining that vacatur allows a court to "avoid the perils of deciding moot cases while eliminating the collateral estoppel effects" of unreviewable decisions). "'The established practice . . . in dealing with a civil case" that has become moot pending appellate review "is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Rendell*, 484 F.3d at 243 (quoting *United States v. Munsingwear*, 340 U.S. 36, 40 (1950)); *Main Line Fed. Sav. & Loan Ass'n*, 721 F.2d at 910 n.4 ("The proper disposition when a case becomes moot on appeal is an order vacating the lower court's judgment."). This practice has "been employed by district courts sitting in an appellate capacity, including in review of IDEA cases." *Pollock*, 2014 WL 2860279, at *13 (citing *L.K. ex rel. Henderson v. N.C. State Bd. of Educ.*, No. 08- 85, 2011 WL 861181, at *4-5 (E.D. N.C. Feb. 18, 2011); *Andre S.*, 2010 WL 715560, at *7). Derived from principles of equity, its purpose is to "prevent a judgment, unreviewable because of mootness, from spawning any legal consequences.'" *Id.* (quoting *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 217 (3d Cir. 2003)). The slate is wiped clean, and "'[t]he path for future relitigation'" is cleared "by eliminating a judgment the loser was stopped from opposing on direct review." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997)).

Vacatur, however, "'should not be applied blindly;" rather, "'the equities and the underlying reasons for mootness'" must always be considered before a judgment is vacated. *Donovan*, 336 F.3d at 218 (quoting *Humprheys v. DEA*, 105 F.3d 112, 113-14 (3d Cir. 1996)). Thus, a judgment should be vacated only "when mootness occurs through happpenstance – circumstances not attributable to the parties – or, relevant here, the 'unilateral action of the party who prevailed in the lower court.'" *Id.* (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994)). By contrast, "neither mootness by reason of settlement, nor mootness

due to the voluntary act of the losing party, justifies vacatur of a judgment under review." *Id.* (citations and quotation marks omitted).

This discussion "suggests the appropriate solution to the adverse consequences pointed to by" the School District. *Pollock*, 2014 2860279, at *13. Since K.B.'s decision to transfer C.L. following the issuance of the Hearing Officer's decision, and not any voluntary act by the School District, mooted the School District's appeal, vacatur of the Hearing Office's decision is warranted.[6] The slate will be wiped clean, and the parties will be left in the same position they were in before the Hearing Officer's decision was issued, thereby alleviating the School District's concerns (whether well founded or not)[7] about the possible preclusive effects of that

---

6.      Although neither party has requested that the Hearing Officer's decision be vacated, the Court has the authority to order it *sua sponte* when appropriate. *Columbian Rope Co. v. West*, 142 F.3d 1313, 1318 n.5 (D.C. Cir. 1998) (quoting *Weaver v. United Mine Workers of Am.*, 492 F.2d 580, 587 n.36 (D.C. Cir. 1973)).

7.      Whether the Hearing Officer's decision could actually bind the School District in future proceedings arising, for example, under the ADA or RA or § 1983, is at least questionable. *See, e.g.*, *C.M. v. Bd. of Educ. of Union Cnty. Reg'l High Sch. Dist.*, 128 F. App'x 876, 880 n.3 (3d Cir. 2005) (suggesting that a judicially unreviewed state administrative decision has no preclusive effect in subsequent federal proceedings); *D.E. v. Cent. Dauphin Sch. Dist.*, No. 06-2423, 2013 WL 7752393, at *5 n.18 (M.D. Pa. Jan. 3, 2013), *aff'd*, 765 F.3d 260 (3d Cir. 2014) (explaining, in the IDEA context, that "it makes no sense to give a judicially unreviewed administrative decision preclusive effect on the reviewing district court") (citing *Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 296 (M.D. Pa. 2008)); *N.T. ex rel. Trujillo v. Espanola Pub. Sch.*, No. 04-0415, 2005 WL 6168483, at *7 (D.N.M. June 21, 2005) (concluding that it "would have made little sense for Congress to include provisions in the IDEA requiring exhaustion of administrative remedies and setting forth a specific standard of judicial review if the results of administrative proceedings conducted under this statute were considered final and afforded preclusive effect before any judicial review had occurred"); *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 455 F. Supp. 2d 1286, 1314 (D.N.M. 2006), *aff'd sub nom.*, 565 F.3d 1232 (10th Cir. 2009) (holding that the "portions of the [hearing officer's] decision which found in Plaintiffs' favor have no preclusive effect on their ADA and Section 504 claims"). This issue is not before the Court, however, so it need not – and cannot – be definitively decided. It is enough to say that vacating the Hearing Officer's decision will avert even the *possibility*, however small, that the Hearing Officer's conclusions on certain issues will prevent the School District from re-litigating those issues in any future proceedings, including that which is currently pending at the administrative level.

decision. To be sure, K.B. will not be satisfied with this result, inasmuch as the Hearing Officer's decision was in her favor and she wants to preserve certain findings so that they bind the Hearing Officer in the now-pending proceedings. But since her decision to transfer C.L. caused this appeal to become moot, thereby depriving the School District of its right to judicial review of that decision, the balance of equities does not weigh in her favor. Holding otherwise and leaving the Hearing Officer's decision standing would in effect "be sanctioning conduct which manipulates procedure so as to make lower court judgments both binding and unreviewable." *Penguin Books*, 929 F.2d at 74 (2d Cir. 1991).

One final issue needs to be addressed. In the companion case, 2:14-cv-1666, whose claims have been incorporated in this case by reference by K.B., the parties did not separately and specifically addressed K.B.'s request for attorney's fees under 20 U.S.C. § 1415(i)(3)(B)(i). In retrospect, this appears to have been an oversight. The attorney's fee request was seemingly lost in the muddle that was K.B.'s 22-count, 75-page Amended Complaint. Now, however, K.B. is effectively teeing this issue up by arguing that the attorney's fee request is enough to keep this case alive. For the reasons already explained, the Court disagrees with that proposition. Still, the finding of mootness does not preclude K.B.'s request for attorney's fees for work done during the due process hearing. *See Rodarte ex rel. Chavez*, 127 F. Supp. 2d at 1114 (citing *Doe v. Marshall*, 622 F.2d 118, 119-20 (5th Cir. 1980)); *E.D. ex rel. Doe v. Newburyport Pub. Sch.*, 654 F.3d 140, 144 (1st Cir. 2011) (citing *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454-55 (1st Cir. 2009)). This is true even though the underlying decision will be vacated. *See Diffenderfer*, 587 F.3d at 453 (rejecting argument that vacatur of a judgment deprived plaintiffs of "prevailing party" status). As the First Circuit Court of Appeals has explained, "'[T]he question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable

jurisdiction[.]'" *Id.* (quoting *United States v. Ford*, 650 F.2d 1141, 1143-44 (9th Cir. 1981)). It turns "on a wholly independent consideration: whether [the party seeking fees] is a 'prevailing party.'" *Marshall*, 622 F.2d at 120.

"[I]n the mootness context, a 'prevailing party' is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness." *Id.* at 453 (emphasis in original). "Courts of appeals apply this test by looking only to what relief the district court granted and *not to whether the case was rightly decided.*" *Id.* (emphasis added). Therefore, if the Hearing Officer's decision made C.L., by and through K.B., the "prevailing parties" before C.L. was transferred out of the School District, then they continued to be "prevailing parties" even though C.L. was in fact transferred. *See Newburyport Pub. Sch.*, 654 F.3d at 144. Because this issue has not heretofore been squarely addressed, the Court will provide the parties with an opportunity to be heard with respect to it. Accordingly, C.L., by and through K.B., may file a motion for attorney's fees under 20 U.S.C. § 1415(i)(3)(B)(i) **on or before October 30, 2015**. The School District shall file a response **on or before November 13, 2015**.

IV.    **Conclusion**

For the reasons hereinabove stated, this case will be **DISMISSED AS MOOT** and the decision of the Hearing Officer will be **VACATED**. However, the Court will retain equitable jurisdiction over K.B.'s request for attorney's fees under 20 U.S.C. § 1415(i)(3(B)(i). An appropriate order follows.

McVerry, S.J.

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARS AREA SCHOOL DISTRICT,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **2:14-cv-1728** |
| | ) |
| **C. L.**, *by and through his parent and natural* | ) |
| *guardian, K.B.*, | ) |
| **Defendant.** | ) |
| | ) |

## <u>ORDER</u>

**AND NOW**, this 16th day of October, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that this case is **DISMISSED AS MOOT**. It is **FURTHER ORDERED** that the findings and decision of Pennsylvania Special Education Hearing Officer Anne Carroll, Esquire, dated November 24, 2014, are hereby **VACATED**.

C.L., by and through K.B., may file a motion for attorney's fees under 20 U.S.C. § 1415(i)(3)(B)(i) **on or before October 30, 2015**. The School District shall file a response **on or before November 13, 2015**.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
Senior United States District Judge

cc:    **Thomas E. Breth, Esquire**
       Email: tbreth@dmkcg.com
       **John P. Corcoran, Jr., Esquire**
       Email: jpc@jgcg.com

       (via CM/ECF)